ANNA A. HAMILTON, ADMINISTRATRIX, ETC., APPELLANT, v. ORANGE SAVINGS BANK, RESPONDENT.

Submitted December 10, 1923—Decided March 3, 1924.

On appeal from the Essex County Circuit Court, in which Judge Dungan filed the following opinion:

"This matter originally came before the court upon a motion made by the plaintiff to strike out the answer of the defendant. When the motion came on for argument it was agreed that the facts were not in dispute, and that the court should hear and determine the case upon the pleadings, the arguments of counsel and the agreed facts.

"These facts are that on June 18th, 1894, William H. Armstrong, plaintiff's intestate, opened an account in the

bank of the defendant, that thereafter there were sundry transactions involving deposits and withdrawals, the last being a withdrawal in March, 1896, after which there were no transactions with Armstrong until October 18th, 1920, when he made a demand on the defendant for payment of principal and interest due on said account, which was refused; that in the year 1897 Armstrong left America and went to Ireland, where he remained up to the time of the commencement of this suit; that on August 17th, 1917, more than twenty-one years after the last transaction with the defendant, the Prerogative Court of this state decreed that William H. Armstrong had departed this life, and issued letters of administration on his estate to William P. Mc-Michael, who qualified as such administrator and who filed· with the defendant a certified copy of his letters of administration, gave satisfactory evidence to the bank that the deposit book had been lost and demanded payment to him of the amount of the deposit with interest, and this amount was paid to him by the defendant.

"During the pendency of this suit Armstrong died and the present plaintiff was appointed administratrix of his estate.

"Upon these facts the plaintiff claims the right to recover against the bank under the authority of *Jochumsen* v. *Suffolk Savings Bank,* 3 *Allen (Mass.)* 87; *Scott* v. *McNeal,* 154 *U. S.* 34, and *Griffith* v. *Frazier,* 12 *U. S.* 24, and criticises or distinguishes the cases of *Roderigas* v. *East River Savings Institution,* 63 *N. Y.* 460, and *Plume* v. *Howard Savings Institution,* 46 *N. J. L.* 211, upon which the defendant relies.

"The latter case was in the New Jersey Supreme Court, and the opinion of the court was written by Chief Justice Beasley, in which he holds that a decree of the Orphans' Court, granting letters of administration on a petition and proofs, cannot be called in question in a collateral proceeding, and the same reasoning is applicable where the letters are granted by the Prerogative Court, as in the case in hand.

"Although the decision in Roderigas *v.* East River Savings Institution, which is a case substantially similar to this one,

is criticised by other courts, Chief Justice Beasley, in the Plume case, speaks of it as a 'carefully considered case,' and refers, apparently with approval, to the argument and decision in that case. He says that 'its reasoning, notwithstanding the adverse criticism to which it has been subjected appears to be of great weight.' That a conclusive efficacy should be given to letters of administration by whatever tribunal issued, so far as merely collateral impeachment is concerned, is a plain dictate of sound public policy, for few things can be more oppressive than to require the debtors of a person who chooses so to absent himself as to give rise to a judicial conclusion that he is dead, to bear the burden of paying the debts they owe to such absentee, to his representative duly appointed according to legal forms, and at the same time to assume the risk of such payment being afterwards declared to be invalid, on the ground that such absentee was still alive. The doctrine of the nullity of such grants of administration would also be attended by the further disastrous result of rendering the surrogate or other court of limited jurisdiction liable to be treated as wrongdoers for everything that should be done by virtue of such letters, and which might prove detrimental to the interests of the person supposed to be dead.'

"Although the Plume case is not exactly like this, in that it did not appear in that case that plaintiff's intestate was actually alive when administration was granted, my view is that the favorable comment of Chief Justice Beasley upon the Roderigas case is an indication of the policy of the courts of this state upon the precise question here involved, which is, 'whether payment to an administrator, duly appointed by the Prerogative Court, of a person supposed to be dead, upon due proof of death and intestacy, but who, it afterward develops, was living at the time such letters were granted, is an absolute discharge of the debt, and valid and conclusive against an administratrix appointed after the decease of such person, in a suit brought by the administratrix to recover the same debt.'

"I think this question must be answered in the affirmative, and I decide that the payment by the defendant to William P. McMichael, administrator appointed by the Prerogative Court in 1917, was a discharge of its debt to William H. Armstrong, and that the plaintiff in this suit is not now entitled to recover that debt. I, therefore, give judgment against the plaintiff and in favor of the defendant."

For the appellant, *W. R. Crosson.*

For the respondent, *William A. Lord, John R. Hardin* and *Charles B. Storrs.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Judge Dungan in the Circuit Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, HEPPENHEIMER, GARDNER, VAN BUSKIRK, CLARK, JJ. 12.